**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CSX TRANSPORTATION, INC.,**

       **Plaintiff,**

**-vs-**                                      **Case No. 6:05-cv-362-Orl-31KRS**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION,**

       **Defendant.**

_____

# ORDER

This case is before the Court on Defendant National Railroad Passenger Corporation's ("Amtrak") Motion to Compel Arbitration (Doc. 14-1) and Plaintiff CSX Transportation's ("CSXT") Opposition (Doc. 17) thereto. The following analysis concerns the proper forum for a dispute between two major railway companies. The dispute is over a railway station that may be necessary or appropriate to intercity rail passenger service. Upon consideration of the pleadings and the record, the Court finds that the parties have agreed to arbitrate the dispute.

**I.     Background**

In 1970, Congress enacted the Rail Passenger Service Act, 45 U.S.C. § 501 *et seq*. ("Rail Act"), which prompted the creation of Amtrak and gave it the responsibility to provide "modern, efficient, intercity rail passenger service." The Rail Act directed Amtrak to contract with railroad companies in order to enable Amtrak to provide intercity rail passenger service. *See id.* § 561. To that end, contracts were to be "made upon such terms and conditions as necessary to permit . . . [Amtrak] to undertake passenger service . . . ." *Id.*

CSXT is, by its own description, "the largest rail network in the eastern United States." *See* http://www.csx.com/?fuseaction=whoweare.subsidiary. CSXT boasts "a network of more than 23,000 route miles in 23 states, the District of Columbia and two Canadian Provinces." *Id.*

On April 16, 1971, consistent with the Rail Act, Amtrak entered into a contract (the "NRPC Agreement") with predecessors to CSXT. (Docs. 14-3 - 14-6). The NRPC Agreement has been reformed and amended since its original inception, but it continues in force as a basic cooperative agreement between Amtrak and CSXT with respect to intercity rail passenger operations. As last amended, the NRPC Agreement is to "remain in effect at least until May 31, 2004, and thereafter until terminated by sixty (60) days' written notice to the other party." (Doc. 14-6 at 24).

The NRPC Agreement generally provides that "[s]ubject to and in accordance with the terms and conditions of this Agreement, CSXT agrees to provide Amtrak with the use of facilities and the services requested by Amtrak for or in connection with the operation of Amtrak's Intercity Rail Passenger Service . . . ." (Doc. 14-3 at 8). With regard to so-called "ancillary facilities," such as railway stations,[1] the NRPC Agreement also provides that

> CSXT . . . agrees to provide and furnish all labor, materials, equipment and facilities necessary to perform [Amtrak's Intercity Rail Passenger Service] . . . , but shall not, except as otherwise provided in this Agreement or upon agreement with Amtrak, be required to purchase, construct, rebuild or replace . . . ancillary facilities . . . .

and

---

[1] The NRPC Agreement defines "ancillary facilities" as facilities "other than Rail Lines, such as but not limited to depots, platforms, canopies, parking areas, and servicing facilities." (Doc. 14-3 at 13). Railway stations, in North America, are commonly referred to as depots. OXFORD ENGLISH REFERENCE DICTIONARY 383 (rev. 2nd ed. 2002).

-2-

> In the event CSXT shall wish to dispose of fixed ancillary facilities or portions thereof . . . which are owned or leased by it and which are then being used in and necessary to [Amtrak's Intercity Rail Passenger Service], CSXT will notify Amtrak, and on request of Amtrak, shall furnish a substitute facility reasonably equivalent in utility.  In the event that Amtrak has leased from CSXT a fixed ancillary facility or portion thereof and Amtrak either removes, or fails to replace or maintain such facility, CSXT shall be under no obligation to furnish a substitute facility.

(*Id*. at 11, 13-14).  With regard to the resolution of disputes, the NRPC Agreement further includes the following Arbitration Clause:

> any claim or controversy between Amtrak and CSXT concerning the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration in accordance with the provisions of the Amtrak Arbitration Agreement dated April 16, 1971, among Amtrak and certain other railroads.  The parties hereby agree to be bound by the provisions of said Arbitration Agreement.

(Doc. 14-4 at 12).

The NRPC Agreement, as amended, specifically contemplates the existence and continued effect of numerous leases involving ancillary facilities.  (Doc. 14-6 at 18- 19).  Among those leases is the lease of a "passenger station in Sanford, FL, dated August 25, 1989" (the "Sanford Station Lease").  (*Id.* at 19).  Other than providing a description of the Sanford Station and certain rights and obligations as to its use, the Sanford Station Lease provides, in part, that

> It is . . . expressly understood and agreed: (I) that Amtrak may occupy and use [the Sanford Station] subject to the terms of a contractual agreement between the parties hereto dated April 16, 1971, as amended from time to time, and generally referred to as the "NRPC Agreement"; and (ii) that [Amtrak] reserves unto itself and its successors all rights and privileges under the NRPC Agreement; and (iii) notwithstanding anything to the contrary contained herein, this Lease and [Amtrak's] occupancy hereunder of the [Sanford Station] shall be governed by the provisions of the NRPC Agreement . . . .

(Doc. 1 at 8).

A dispute has arisen between CSXT and Amtrak with regard to the Sanford Station. CSXT has filed in this Court a two-count Complaint (Doc. 1) – for breach of contract and for eviction – against Amtrak. CSXT contends, in essence, that the Sanford Station has suffered extensive damage; Amtrak has failed and refused to perform adequate repairs; and CSXT is, thus, entitled to damages, to terminate the Sanford Station Lease, and to take possession of the Sanford Station.

Rather than substantively respond to CSXT's claims, Amtrak has invoked the NRPC Agreement's Arbitration Clause as ground to compel arbitration. As framed by the parties and understood by the Court, the basic issue in this case is whether a relevant arbitration agreement exists in regard to CSXT's claims.

## II.     Legal Analysis

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), was enacted to make arbitration agreements as enforceable, generally, as other contracts and to relieve arbitration agreements from a disfavored status long imposed under the common law. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Consistent with a purpose to see that valid arbitration agreements are enforced, the FAA further provides that, under appropriate circumstances, a court is to stay judicial proceedings involving arbitrable claims, *id.* § 3, or compel arbitration, *id.* § 4, or do both. *See Gilmer*, 500 U.S. at 24.

Application of the FAA is premised on the existence of a relevant, enforceable arbitration agreement. *See* 9 U.S.C. §§ 2-3. Unless a person is bound to an agreement to arbitrate, arbitration

cannot be forced upon party seeking to avoid it. *Chastain v. Robinson-Humpfrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992). Nevertheless, the FAA expresses an unquestionably strong federal policy in favor of enforcing arbitration agreements. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1311 (11th Cir. 2005); *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003). The FAA's policy requires a liberal reading of arbitration agreements and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27, 24-25 (1983). When a court is satisfied that an issue is fairly referable to arbitration under a written agreement, an arbitral forum is the appropriate place to resolve claims between parties to that agreement. *See* 9 U.S.C. § 3; *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22 n.27, 24-25.

In the instant case, the Sanford Station Lease explicitly states that it is subject to the terms of the NRPC Agreement. (Doc. 1 at 8). Moreover, the Sanford Station Lease, by all appearances, involves a specific subcontract within the general cooperative arrangement set forth in the NRPC Agreement. The NRPC Agreement contemplates: (1) generally, that CSXT will provide various facilities in connection with Amtrak's Intercity Rail Passenger Service, (Doc. 14-3, at 8); (2) that CSXT will provide, among other things, ancillary facilities necessary to perform Amtrak's Intercity Rail Passenger Service, (*see id*. at 11); and (3) that CSXT will not, without providing a reasonable substitute, dispose of an ancillary facility leased to Amtrak, unless Amtrak has failed to maintain the facility, (*see id.* at 13-14). If from nothing else, it is evident from the two agreements' cross-references that the Sanford Station Lease is one of numerous leases arranged in accordance with the NRPC Agreement and in order to enable Amtrak's Intercity Rail Passenger Service. (*Id.* at 7-8; Doc. 14-6 at 18- 19)

Whether the Sanford Station is necessary to Amtrak's service and the impact lease termination would have on Amtrak's service constitute or involve issues of the NRPC Agreement's interpretation, application, or implementation.  One or more of the NRPC Agreement's above-referenced provisions would be impacted if CSXT were to terminate the Sanford Station Lease and take possession of the Sanford Station; Amtrak's continued use of the Sanford Station is a facet of the intercity rail passenger service the NRPC Agreement was formed to enable.  Both CSXT and Amtrak have agreed to written terms requiring them the submit disputes such as the one at issue to binding arbitration.[2]  (Doc. 14-4 at 12).

### III.     Conclusion

For the foregoing reasons, it is therefore

**ORDERED** that Amtrak's Motion to Compel Arbitration (Doc. 14-1) is **GRANTED**.  The parties shall submit this dispute to binding arbitration according to the terms of the NRPC Agreement.  This case is **DISMISSED** without prejudice to either party filing a motion to reopen the case for relief or judgment under the FAA.  The Clerk of the Court is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 18, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[2] Although CSXT argues that any arbitration that is ordered should be conducted in a forum other than the one specified in the NRPC Agreement, that issue is not properly before the Court. While the contractually-specified forum may not currently be in operation, it is not at all clear (or ostensibly likely) that the forum cannot be reconvened.  If the parties cannot (or if a party refuses) to reconvene that forum, the FAA may provide for alternative arbitrator(s) upon appropriate application.  9 U.S.C. § 5.  As a practical matter, however, the parties are operating under an agreement that appears to be terminable at will (upon 60 days' notice). If the parties see a mutual benefit to the NRPC Agreement's continued existence, they may be expected to honor its terms.